FILED
JULY 3, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Case: 1:07-cr-00840 Document #: 72 Filed: 06/03/2008 Page 1 of 13 

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE GOTTSCHALL
MAGISTRATE JUDGE COX

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No.   07 CR 840 |
| vs. ) | |
| ) | Violations: Title 18, United States |
| MARIO A. CARROLL, ) | Code, Sections 1344 and 1343 |
| ROBERT E. LOUIS, ) | |
| LASHON DANIELS, and ) | SUPERSEDING INDICTMENT |
| CECILIA J. EDWARDS ) | |

FILED
JUN - 3 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

COUNT ONE

The SPECIAL FEBRUARY 2008-1 GRAND JURY charges:

1. At times material to the indictment:

a. Countrywide Bank, FSB ("Countrywide Bank") was a financial institution with deposits insured by the Federal Deposit Insurance Corporation. Countrywide Home Loans, Inc. ("Countrywide Home Loans") acted as the agent for Countrywide Bank in connection with the origination of certain mortgage loans and had offices located throughout the United States, including in the Northern District of Illinois.

b. Individuals A and B were the owners of the residence located at 744 North Drake Street in Chicago, Illinois (hereinafter "the Drake Street residence"). Individuals A and B possessed full equity in the Drake Street residence without any mortgages or liens encumbering the residence.

c. Defendant LASHON DANIELS was employed as a loan officer for American Street Mortgage, which was a mortgage brokerage company located in Chicago, Illinois.

2. From in or about August 2007, and continuing to in or about December 2007, at Oak Brook, in the Northern District of Illinois, and elsewhere,

> MARIO A. CARROLL,
> ROBERT E. LOUIS, and
> LASHON DANIELS,

defendants herein, and others known and unknown to the Grand Jury, including Co-schemer A, knowingly devised and participated in a scheme to defraud and to obtain money and funds owned by and under the custody and control of Countrywide Bank, by means of materially false and fraudulent pretenses, and representations, which scheme is further described in the following paragraphs.

3. It was part of the scheme that, in or about August 2007, without the knowledge or authorization of Individuals A and B, persons known and unknown to the Grand Jury recorded a quit claim deed bearing the forged signatures of Individuals A and B with the Cook County Recorder of Deeds purporting to reflect the transfer of Individuals A and B's ownership interest in the Drake Street residence to defendant CARROLL.

4. It was further part of the scheme that, in or about October 2007, in return for Co-schemer A's promise that she would receive $40,000 if the loan was approved and closed, defendant DANIELS agreed to assist persons known and unknown to the grand jury in submitting a fraudulent mortgage application to obtain financing in connection with the purported purchase of the Drake Street residence from defendant CARROLL by Individual C.

5. It was further part of the scheme that, in or about October 2007, defendant DANIELS and persons known and unknown to the Grand Jury caused the submission of an application in the

name of Individual C for a mortgage loan to Countrywide Home Loans, which was acting in its capacity as an agent for Countrywide Bank. The application falsely represented that Individual C was seeking financing in connection with his purported purchase of the Drake Street residence from defendant CARROLL when, in fact, Individual C had no knowledge of the application, Individual C had not agreed to purchase the Drake Street residence, and defendant CARROLL did not have any ownership interest in the Drake Street residence and did not otherwise have authorization to transfer title to the residence.

6. It was further part of the scheme that, in or about October 2007, in connection with Individual C's purported loan application to Countrywide Home Loans, defendant DANIELS and persons known and unknown to the Grand Jury caused the submission of a fictitious real estate contract reflecting the sale of the Drake Street residence by defendant CARROLL to Individual C for $335,000 when, in fact, Individual C had not agreed to purchase the Drake Street residence and defendant CARROLL did not possess an ownership interest in the property or otherwise have authority to transfer title to the Drake Street residence.

7. It was further part of the scheme that, in or about October 2007, in connection with Individual C's purported loan application to Countrywide Homes Loans, defendant DANIELS and persons known and unknown to the Grand Jury caused the submission of a fictitious check stub reflecting payment to defendant CARROLL in the amount of $16,750 that purported to represent the payment of earnest money by Individual C to defendant CARROLL in connection with the purchase of the Drake Street residence when, in fact, no such payment had been made by Individual C, Individual C had not agreed to purchase the Drake Street residence, and defendant CARROLL did

not possess an ownership interest in the residence or otherwise have authority to transfer title to the Drake Street residence.

8. It was further part of the scheme that, in or about October 2007, in connection with Individual C's purported loan application to Countrywide Homes Loans, defendant DANIELS knowingly submitted false information regarding Individual C's income and caused the submission of fictitious documents related to Individual C's income and assets, including a fictitious pay stub, fictitious W-2 forms, and fictitious bank statements.

9. It was further part of the scheme that defendant CARROLL agreed to falsely pose as the owner of the Drake Street residence and to attend the closing as the seller in connection with the fraudulent sale of the Drake Street residence in return for a promise to receive ten percent of the anticipated proceeds from the sale. As defendant CARROLL was well aware, he was not the actual owner of the Drake Street residence and was not otherwise authorized to transfer title to the residence or receive the proceeds from any sale of the residence.

10. It was further part of the scheme that defendant LOUIS agreed to falsely pose as Individual C and attend the closing as the buyer connection with the fraudulent sale of the Drake Street residence in return for the promise to receive $15,000 from the anticipated proceeds of the sale.

11. It was further part of the scheme that, on or about December 13, 2007, defendant DANIELS agreed to transport defendant LOUIS to the office of Stewart Title Company in Oak Brook, Illinois in order for defendant LOUIS to falsely pose as Individual C in connection with the purported sale of the Drake Street residence.

12. It was further part of the scheme that, on or about December 13, 2007, for the purpose of fraudulently obtaining the proceeds from the purported sale of the Drake Street residence and for the purpose of fraudulently portraying that he had an ownership interest in the residence and the ability to convey title to the residence, defendant CARROLL appeared at the office of Stewart Title Company in Oak Brook, Illinois for the closing in connection with the purported sale of the Drake Street residence to Individual C, falsely represented himself to be the owner of the Drake Street residence, and signed documents falsely representing that he was selling the Drake Street residence. As defendant CARROLL was well aware, he was not actual owner of the Drake Street residence and was not otherwise authorized to convey title or a security interest in the Drake Street residence.

13. It was further part of the scheme that, on or about December 13, 2007, defendant DANIELS and LOUIS appeared at the offices of Stewart Title Company in Oak Brook, Illinois for the closing in connection with the purported sale of the Drake Street residence. During the ensuing closing, defendant LOUIS signed various documents falsely representing that he was Individual C and that he was purchasing the Drake Street residence. Defendant LOUIS also presented a fictitious Illinois Driver's License bearing the name and personal information of Individual C, but depicting a photograph of defendant LOUIS. As defendant LOUIS was well aware, he was not Individual C, he was not purchasing the Drake Street residence, and defendant CARROLL did not have authority to convey a security interest in the Drake Street residence.

14. It was further a part of the scheme that defendants CARROLL, LOUIS, and DANIELS and their co-schemers concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden, the existence and purpose of the scheme and the acts done in furtherance

of the scheme.

15. On December 13, 2007, at Oak Brook, in the Northern District of Illinois, Eastern Division,

>   MARIO A. CARROLL,
>   ROBERT E. LOUIS, and
>   LASHON DANIELS,

defendants herein, knowingly executed and attempted to execute the above-described scheme to defraud Countrywide Bank by appearing at the Stewart Title Company in Oak Brook, Illinois for the closing of defendant CARROLL's purported sale of the Drake Street residence to defendant LOUIS posing as Individual C and attempting to cause Countrywide Bank to provide approximately $304,131 in funds to defendant CARROLL in connection with the purported sale of the Drake Street residence;

In violation of Title 18, United States Code, Section 1344.

## COUNT TWO

The SPECIAL FEBRUARY 2008-1 Grand Jury further charges:

1. At times material to the indictment:

   a. Provident Funding Group, Inc. ("Provident Funding") was a privately held mortgage company that originated mortgage loans with branch offices throughout the United States.

   b. Individuals D and E were the owners of the residence located at 1849 South Kedzie Avenue in Chicago, Illinois (hereinafter "the Kedzie Avenue residence"). Individuals D and E possessed full equity in the Kedzie Avenue residence without any mortgages or liens encumbering the residence.

   c. Defendant LASHON DANIELS was employed as a loan officer for American Street Mortgage, which was a mortgage brokerage company located in Chicago, Illinois.

2. From in or about September 2007, and continuing to in or about December 2007, at Oak Brook, in the Northern District of Illinois, and elsewhere,

> MARIO A. CARROLL,
> ROBERT E. LOUIS,
> LASHON DANIELS, and
> CECILIA EDWARDS,

defendants herein, and others known and unknown to the Grand Jury, including Co-schemer A, knowingly devised and participated in a scheme to defraud and to obtain money from Provident Funding, by means of materially false and fraudulent promises, pretenses, and representations, which scheme is further described in the following paragraphs.

3. It was part of the scheme that, in or about September 2007, without the knowledge or authorization of Individuals D and E, persons known and unknown to the Grand Jury recorded

a warranty deed bearing the forged signatures of Individuals D and E with the Cook County Recorder of Deeds purporting to reflect the transfer of Individuals D and E's ownership interest in the Kedzie Avenue residence to defendant EDWARDS.

4. It was further part of the scheme that, in or about October 2007, in return for Co-schemer A's promise that she would receive $20,000 if the loan was approved and closed, defendant DANIELS agreed to assist persons known and unknown to the grand jury in submitting a fraudulent mortgage application to obtain financing in connection with the purported purchase of the Kedzie Avenue residence from defendant CARROLL by Individual C.

5. It was further part of the scheme that, in or about October 2007, defendant DANIELS and persons known and unknown to the Grand Jury caused the submission of an application for a mortgage loan to Provident Funding. The application falsely represented that Individual C was seeking financing in connection with his purported purchase of the Kedzie Avenue residence from defendant EDWARDS when, in fact, Individual C had no knowledge of the application, Individual C had not agreed to purchase the Kedzie Avenue residence, and defendant EDWARDS did not have any ownership interest in the Kedzie Avenue residence and did not otherwise have authorization to transfer title to the residence.

6. It was further part of the scheme that, in or about October 2007, in connection with Individual C's purported loan application to Provident Funding, defendant DANIELS and persons known and unknown to the Grand Jury caused the submission of a fictitious real estate contract reflecting the sale of the Kedzie Avenue residence by defendant EDWARDS to Individual C for $350,000 when, in fact, Individual C had not agreed to purchase the Kedzie Avenue residence and

defendant EDWARDS did not possess an ownership interest in the property or otherwise have authority to transfer title to the Kedzie Avenue residence.

7. It was further part of the scheme that, in or about October 2007, in connection with Individual C's purported loan application to Provident Funding, defendant DANIELS and persons known and unknown to the Grand Jury caused the submission of a photocopy of a fictitious check reflecting payment to defendant EDWARDS in the amount of $17,500 that purported to represent the payment of earnest money by Individual C to defendant EDWARDS in connection with the purchase of the Kedzie Avenue residence when, in fact, no such payment had been made by Individual C, Individual C had not agreed to purchase the Kedzie Avenue residence, and defendant EDWARDS did not possess an ownership interest in the residence or otherwise have authority to transfer title to the Kedzie Avenue residence.

8. It was further part of the scheme that, in or about October 2007, in connection with Individual C's purported loan application to Provident Funding, defendant DANIELS knowingly submitted false information regarding Individual C's income and caused the submission of fictitious documents related to Individual C's income and assets, including a fictitious pay stub, fictitious W-2 forms, and fictitious bank statements.

9. It was further part of the scheme that defendant EDWARDS agreed to falsely pose as the owner of the Kedzie Avenue residence and to attend the closing as the seller in connection with the fraudulent sale of the Kedzie Avenue residence. As defendant EDWARDS was well aware, she was not the actual owner of the Kedzie Avenue residence and was not otherwise authorized to transfer title to the residence or receive the proceeds from any sale of the residence.

10. It was further part of the scheme that defendant LOUIS agreed to falsely pose as Individual C and attend the closing as the buyer connection with the fraudulent sale of the Drake Street residence in return for the promise to receive part of the anticipated proceeds of the sale.

11. It was further part of the scheme that defendant CARROLL agreed to accompany defendant LOUIS to the offices of Stewart Title Company in Oak Brook, Illinois for the purpose of assisting defendant LOUIS in completing and the paperwork in connection with the purported sale of the Kedzie Avenue residence.

12. It was further part of the scheme that, on or about October 19, 2007, for the purpose of fraudulently obtaining the proceeds from the purported sale of the Kedzie Avenue residence and for the purpose of fraudulently portraying that she had an ownership interest in the residence and the ability to convey title to the residence, defendant EDWARDS appeared at the office of Stewart Title Company in Oak Brook, Illinois for the closing in connection with the purported sale of the Kedzie Avenue residence to Individual C, falsely represented herself to be the owner of the Kedzie Avenue residence, and signed documents falsely representing that she was selling the Kedzie Avenue residence. As defendant EDWARDS was well aware, she was not actual owner of the Kedzie Avenue residence and was not otherwise authorized to convey title or a security interest in the Kedzie Avenue Street residence.

13. It was further part of the scheme that, on or about October 19, 2007, defendant LOUIS appeared at the offices of Stewart Title Company in Oak Brook, Illinois for the closing in connection with the purported sale of the Kedzie Avenue residence fraudulently posing as the buyer, Individual C. During the ensuing closing, defendant LOUIS signed various documents falsely

representing that he was Individual C and that he was purchasing the Kedzie Avenue residence. Defendant LOUIS also presented a fictitious Illinois Driver's License bearing the name and personal information of Individual C, but depicting a photograph of defendant LOUIS. As defendant LOUIS was well aware, he was not Individual C, he was not purchasing the Kedzie Avenue residence, and defendant EDWARDS did not have authority to convey a security interest in the Kedzie Avenue Street residence.

14. It was further part of the sale that, on or about October 19, 2007, defendant CARROLL appeared at the offices of Stewart Title Company in Oak Brook, Illinois for the closing in connection with the purported sale of the Kedzie Avenue residence. During the ensuing closing, defendant CARROLL assisted defendant LOUIS in reviewing and signing the various documents falsely representing that defendant LOUIS was Individual C and that he was purchasing the Kedzie venue residence. As defendant CARROLL was well aware, defendant LOUIS was not Individual C, he was not purchasing the Kedzie Avenue residence, and defendant EDWARDS did not have authority to convey a security interest in the Kedzie Avenue residence.

15. It was further part of the scheme that, on or about October 19, 2007, defendants caused Stewart Title to issue a check payable in the amount of approximately $317,581.92 to defendant EDWARDS in connection with the closing for the purported sale of the Kedzie Avenue residence. The check represented funds defendant EDWARD's proceeds as the purported seller in connection with the purported sale of the Kedzie Avenue residence to Individual C.

16. It was further part of the scheme that, following the closing at Stewart Title, defendants CARROLL, LOUIS, and EDWARDS, as well as other known to the grand jury, traveled

to the Azteca Currency Exchange located at 4327 West 26th Street in Chicago to cash the check that she had obtained from Stewart Title. Upon arriving at the currency exchange, defendant EDWARDS presented the check, which she had endorsed, and obtained the proceeds in cash from the currency exchange over the course of the next few days.

17. It was further a part of the scheme that defendants CARROLL, LOUIS, DANIELS, and EDWARDS and their co-schemers concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

18. On or about October 19, 2007, in the Northern District of Illinois, Eastern Division,

> MARIO A. CARROLL,
> ROBERT E. LOUIS,
> LASHON DANIELS, and
> CECILIA EDWARDS,

defendants herein, for the purpose of executing and attempting to execute the scheme described above, knowingly caused to be transmitted in interstate commerce from Minnesota to Illinois, by means of wire communication, certain signs, signals and sounds, namely, a transfer of approximately $329,740.97 in funds from a bank account maintained by Provident Funding at U.S Bank to a bank account maintained by Stewart Title Company at JP Morgan Chase Bank in Illinois in connection

with the closing of Individual C's purported purchase of the Kedzie Avenue residence;

In violation of Title 18, United States Code, Section 1343.

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY